IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| JOHN J. DAVIS,<br><br>  Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>  Defendant. | No. 17-CV-80-LRR<br><br>**REPORT AND<br>RECOMMENDATION** |

The claimant, John J. Davis ("claimant"), seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability insurance benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-34 (Act). Claimant contends that the Administrative Law Judge ("ALJ") erred in determining that claimant was not disabled. For the following reasons, I respectfully recommend that the Court **affirm** the ALJ's decision.

## *I. BACKGROUND*

I have adopted the facts as set forth in the parties' Joint Statement of Facts (Doc. 13) and, therefore, will summarize only the pertinent facts. Claimant was born in 1962, was 50 years old when he allegedly became disabled, and was 54 years old at the time of the ALJ's decision. (AR 115-16).[1] Claimant has prior work experience; his work activity since the alleged onset date, however, did not rise to the level of substantial gainful activity. (AR 107).

---

[1] "AR" refers to the administrative record below.

On February 10, 2014, claimant applied for a period of disability and disability insurance benefits. (AR 105). On December 22, 2014, claimant applied for supplemental security income. (*Id.*). In both applications, claimant alleged disability beginning May 1, 2013. (*Id.*). In 2014, the Commissioner denied claimant's application initially and on reconsideration. (AR 124-27, 134-37). On April 19, 2016, ALJ Julie Bruntz held a hearing at which claimant and a vocational expert testified. (AR 23-65). On June 23, 2016, the ALJ found claimant was not disabled. (AR 105-16). On June 23, 2017, the Appeals Council denied claimant's request for review of the ALJ's decision, making the ALJ's decision final and subject to judicial review. (AR 8-11).

On July 24, 2017, claimant filed his complaint in this Court. (Doc. 3). By January 31, 2018, the parties had submitted their respective briefs (Docs. 14; 15), and on February 21, 2018, the Court deemed this case fully submitted and ready for decision (Doc. 16). On May 21, 2018, the Honorable Linda R. Reade, United States District Court Judge, referred this case to me for a Report and Recommendation.

## II. *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual has a disability when, due to his physical or mental impairments, "he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to

get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled.

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit, even if the claimant did not ultimately receive pay or profit.

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and mental impairments. § 416.920(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. An impairment is not severe if it does "not significantly limit [a] claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). These include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.*; *see also* 20 C.F.R. § 404.1521.

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment meets or equals one of the presumptively disabling impairments listed in the

regulations, then the claimant is considered disabled regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If claimant can still do his past relevant work, then he is considered not disabled. (*Id.*). Past relevant work is any work the claimant performed within the fifteen years prior to his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. § 416.960(b). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his [ ] physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (citations and internal quotation marks omitted). The RFC is based on all relevant medical and other evidence. Claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled.

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. The Commissioner must show not only that the claimant's RFC will allow him to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591. If the claimant can make the adjustment, then the Commissioner will find the claimant not disabled. At Step Five, the Commissioner has the responsibility of developing the claimant's medical history before making a determination about the existence of a disability. The burden of

persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III. THE ALJ'S FINDINGS

The ALJ made the following findings at each step:

At Step One, the ALJ found that claimant had not engaged in substantial gainful activity since May 1, 2013, the alleged onset date of disability. (AR 107).

At Step Two, the ALJ found that claimant had the following severe impairments: "degenerative disc disease of the lumbar spine, osteoarthritis of the knees, fibromyalgia, asthma, affective disorder, personality disorder, and substance abuse disorder." (AR 108).

At Step Three, the ALJ found that none of claimant's impairments or combination of impairments met or medically equaled a presumptively disabling impairment listed in the relevant regulations. (*Id.*).

At Step Four, the ALJ found claimant had the RFC to perform light work with the following limitations:

> [Claimant] could lift and carry 20 pounds occasionally and 10 pounds frequently. He could stand and walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday. His ability to push and pull, including the operation of hand and foot controls, would be unlimited within these weights. He is left-hand dominant. He could occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. He could never climb ladders, ropes, or scaffolds, and never crawl. He would need to avoid concentrated exposure to extreme cold, humidity, fumes, odors, gasses, poor ventilation, and dust. Further, he would be limited to performing simple, routine tasks. He could have only occasional contact with the public, coworkers, and supervisors.

(AR 109-10). Also at Step Four, the ALJ found that "comparing the claimant's current RFC with the demands of the claimant's past relevant work, the demands

of said work exceed the current RFC. Accordingly, the clamant is unable to perform past relevant work." (AR 115).

At Step Five, the ALJ found that considering claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that claimant could perform. (*Id.*). These included Assembler, Molding Machine Tender, and Mail Sorter. (AR 116). Therefore, the ALJ found that claimant was not disabled. (*Id.*).

## IV. THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645 (citations and internal quotation marks omitted). The Eighth Circuit Court of Appeals explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations and internal quotation marks omitted).

In determining whether the Commissioner's decision meets this standard, a court "consider[s] all of the evidence that was before the ALJ, but . . . do[es] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). A court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The Court must "search the record for evidence contradicting the [Commissioner's] decision and

6

give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the Court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The Court, however, "do[es] not reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the Court "find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the Court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the Court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The Court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion" (citation omitted).).

## V. DISCUSSION

Claimant argues that the ALJ erred in three ways. First, claimant argues the ALJ's RFC assessment is flawed because the ALJ discounted claimant's subjective allegations without identifying inconsistencies within the record as a whole. (Doc. 14, at 3-12). Second, claimant argues that new and additional evidence was erroneously omitted from the record by the Appeals Council. (Doc. 14, at 13-15). Third, claimant argues that

because the ALJ's decision was not supported by substantial medical evidence from a treating or examining source, the ALJ's decision could not have been supported by substantial medical evidence on the record as a whole. (Doc. 14, at 15-17). I will address each argument in order.

### A. *Claimant's Subjective Allegations*

Claimant argues that the ALJ's RFC assessment at Step Four was flawed because the ALJ did not have a sufficient reason for discounting claimant's subjective allegations. (Doc. 14, at 3). Claimant further contends that the objective record fully supports claimant's testimony. (*Id.*, at 3-12).

A claimant's subjective allegations are to be evaluated according to the standards set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (outlining the factors that the adjudicator must give full consideration to relating to subjective complaints). In addition to the objective medical evidence, the ALJ must consider, *inter alia*: "(i) [the] claimant's daily activities; (ii) the duration, frequency, and intensity of the claimant's pain; (iii) precipitating and aggravating factors; (iv) dosage, effectiveness, and side effects of medication; and (v) functional restrictions." *Wheeler v. Berryhill*, No. C17-4038-LTS, 2018 WL 2266514, at *6 (N.D. Iowa May 17, 2018) (citing *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005)).

Here, the ALJ referenced claimant's daily activities; the location, duration, frequency, and intensity of claimant's pain; factors that precipitate and aggravate the symptoms; effectiveness of medication or other treatment modalities; and any other factors that concern claimant's functional limitations. (AR 113); *accord Polaski*, 739 F.2d. at 1322. Although the ALJ did not specifically cite to the *Polaski* case, she nevertheless discussed the required relevant factors. Nothing more is needed. *See Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (holding the ALJ "was not required to discuss each factor's weight in the credibility calculus"). "If the ALJ gives good reasons

for discrediting some testimony, the court is bound by that finding unless it is not supported by substantial evidence on the record as a whole." *Wheeler*, 2018 WL 2266514, at *7 (citing *Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992)). This Court, in *Wheeler*, pointed to several instances where the ALJ identified inconsistencies between claimant's complaints and the medical evidence of record as sufficient "good reasons" for the ALJ to discredit claimant's testimony. (*Id.*).

In her decision, the ALJ pointed to objective medical evidence in the medical record that eroded claimant's subjective allegations. (AR 114). The ALJ found that the physical examinations showed claimant's functions, such as motor strength, sensation, reflexes, and gait, had remained "grossly intact" throughout the medical record. (*Id.*). Further, the ALJ highlighted that although claimant had a consistently low or agitated mood, claimant's general mental status was unremarkable throughout the medical record, and that treatment notes indicated that claimant's depression was largely situational. (*Id.*).

Further, the ALJ found it significant that the claimant's own statements and actions were inconsistent with claimant's subjective allegations. (AR 113-14). Specifically, the ALJ highlighted evidence within the record of the claimant's self-disclosed daily activities, including independent living, household cleaning, shopping trips, traveling out of state, and his prior work history, including two jobs claimant performed as recently as November 2015. (AR 113). The ALJ found that this level of activity contradicted claimant's subjective allegations of the intensity, persistence, and limiting effects of the alleged symptoms. (AR 114).

Claimant argues that a person does not have to be bedridden to be found disabled. (Doc. 14, at 11) (citing *Reed v. Barnhart*, 399 F.3d 917, 924 (8th Cir. 2005)). The Eighth Circuit, however, more recently held that "acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with

9

subjective complaints of disabling pain." *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) (citation omitted). Additionally, the *Medhaug* court found that it was proper for the ALJ to consider claimant's employment occurring after the alleged onset of disability, because "[w]orking generally demonstrates an ability to perform a substantial gainful activity." *Id.*, at 816 (alteration in original) (citation and internal quotation marks omitted). Acts that are inconsistent with subjective allegations diminish a claimant's credibility. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001). Here, in support of her conclusion that claimant's subjective allegations contradicted the record, the ALJ referenced claimant's inaccurate reporting of his own work history, failure to comply with recommended treatments, and that the record did not support claimant's testimony that he was prescribed a cane for ambulatory assistance. (*See* AR 110-14). When an ALJ explicitly discredits a claimant's testimony and gives good reasons for doing so, a court should normally defer to the ALJ's credibility determination because the ALJ has had the opportunity to observe the claimant firsthand. *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). I find that the ALJ has given good reasons for discounting claimant's subjective allegations, and thus, I accept the ALJ's credibility determination.

While claimant correctly states that the ALJ gave little weight to claimant's close friend, Ms. Wendy Bruns' statement, claimant erroneously argues that the ALJ's rejection of Ms. Bruns' report was a reason the ALJ denied the claim. (Doc. 14, at 12). In fact, the ALJ simply stated that "great weight cannot be given to [Ms. Bruns'] report because it . . . is simply not consistent with the objective medical evidence in this case." (AR 112). Further, an ALJ may discount corroborating testimony on the same basis used to discredit the claimant's testimony. *See Black v. Apfel*, 143 F.3d 383, 387 (8th Cir. 2006) (stating that the ALJ's failure to give specific reason for disregarding a third-party's testimony was inconsequential, as the same reasons ALJ gave to discredit claimant could serve as the basis for discrediting the third-party). In this case, I find there are adequate

grounds for the ALJ to find that Ms. Bruns' report could not establish claimant's disability, and that her statement was contradicted by the medical evidence in the record. Therefore, the ALJ could properly reject Ms. Bruns' statement.

Contrary to claimant's argument, the ALJ did consider the record as a whole in deciding to discount claimant's subjective allegations. I find that although claimant presented testimony and evidence of disabling limitations, the ALJ's decision was supported by substantial evidence on the record as a whole.

### B. *Evidence Provided to the Appeals Council*

Claimant argues that the Commissioner erred in not including the statement of claimant's therapist, Ms. Brenda Miller, LISW, in the Administrative Record. (Doc. 14, at 14-15). Ms. Miller's statement was dated November 29, 2016, and was submitted along with claimant's brief to the Appeals Council. (AR 318). Although not referenced by either party, Claimant appears to rely on the Appeals Council's apparent failure to properly follow the Social Security Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX"). HALLEX I-3-5-20(C) requires that an analyst for the Appeals Council "associate" any additional evidence presented to the Appeals Council into the certified administrative record for judicial review. Ms. Miller's statement, however, was omitted from the record. Claimant alleges that this failure to follow the HALLEX regulations is reversible error, for which this Court must remand.

The Eighth Circuit Court of Appeals has not explicitly ruled on the legal effect of the HALLEX. *See, e.g.*, *Mukakabanda v. Colvin*, No. 15-CV-00116-CJW, 2017 WL 405919, *12 n.7 (N.D. Iowa Jan. 30, 2017). Other circuits, however, have. The Ninth Circuit Court of Appeals has held that "HALLEX does not have the force and effect of law, it is not binding on the Commissioner[,] and we will not review allegations of noncompliance with the manual." *Moore v. Apfel*, 216 F.3d 864, 868-69 (9th Cir. 2000). Conversely, the Fifth Circuit Court of Appeals held that although HALLEX does not

carry the authority of law, "if prejudice results from a violation [of internal rules, such as HALLEX], the result cannot stand." *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) (citation omitted).

This Court has previously found that the HALLEX's "guidance is not binding on courts, but is instructive." *Markovic v. Colvin*, No. C15-2059-CJW, 2016 WL 4014683, at *5 (N.D. Iowa July 26, 2016). I, however, do not have to reach the question of the binding nature of HALLEX to provide a recommendation in this case, nor does the Court have to reach this question to render a final judgment.

Pursuant to Title 42, United States Code, Section 405(g), a court may order that additional evidence be taken before the Commissioner, and that the Commissioner "shall file with the court . . . in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based." Acting *sua sponte*, on June 22, 2018, the Court ordered the Commissioner to provide the Court with Ms. Miller's statement dated November 29, 2016. (Doc. 17). On July 9, 2018, the Commissioner filed "a copy of the statement by Ms. Brenda Miller dated November 29, 2016" with the Court.[2] (Docs. 18, at 1; 18-1).

Although the ALJ did not review Ms. Miller's statement, the Appeals Council did review the statement and concluded that it would not have changed the outcome, had the statement been provided to the ALJ. (AR 9). Significantly, although the Administrative Record before the ALJ did not include Ms. Miller's statement dated November 29, 2016, it did include Ms. Miller's notes from twenty sessions with claimant. (*See* AR 588-640). The ALJ considered these therapy notes when reviewing claimant's mental health medical

---

[2] Ms. Miller's statement was filed by the SSA as pages 751-58 of the Certified Administrative Record, and I will cite to Ms. Miller's statement dated November 29, 2016, as AR 751-58 in this report and recommendation.

evidence. (AR 112). These notes contradict Ms. Miller's statement regarding claimant's ability to work. (*Compare* AR 588-640 *with* AR 754-55). For example, on October 28, 2014, Ms. Miller enabled claimant to apply for a peer support program position. (AR 596). Yet, in her statement of November 29, 2016, Ms. Miller stated that claimant was unable to meet competitive standards in the areas of: "[i]nteract[ing] appropriately with the general public; [w]ork[ing] in coordination with or proximity to others without being unduly distracted; and [g]et[ting] along with co-workers or peers without unduly distracting them." (AR 754-55). Claimant was ultimately not accepted for the position not because of his impairments, but because of difficulties passing a background check. (AR 600; 602; 608). In response to claimant's difficulties finding work, Ms. Miller offered counseling on "steps [claimant] can take to find employment. (*Id.*). In contrast, Ms. Miller's statement states that claimant is either "seriously limited" or "unable to meet competitive work standards" in seventeen of twenty-two categories. (AR 754-55). Finally, Ms. Miller's statement regarding claimant's inability to meet competitive work standards as relayed in claimant's brief hews very closely to opining on issues reserved to the Commissioner. 20 C.F.R. § 404.1527(d); (AR 320). Because Ms. Miller's statement was inconsistent with the record as a whole, the ALJ would have been justified in discounting the weight of Ms. Miller's statement. *See Hacker v. Barnhart*, 459 F.3d 934, 937-38 (8th Cir. 2006) (holding an ALJ may discount an opinion's weight when it is inconsistent with the record as a whole). Therefore, I find that even had Ms. Miller's statement been available to the ALJ, the ALJ's decision would still be supported by substantial evidence in light of the record as a whole.

Further, Ms. Miller's statement contains her opinion on claimant's impairment-related limitations and is thus similar to that of a "medical opinion" pursuant to Title 20, Code of Federal Regulations, Section 404.1527(a)(1) (defining a medical opinion as a statement that "reflect[s] judgments about the nature and severity of . . . impairment(s)).

Medical opinions are statements from acceptable medical sources. *Id.* Ms. Miller, however, is a Licensed Independent Social Worker, which is not classified as an "acceptable medical source." 20 C.F.R. § 404.1502. Thus, Ms. Miller's "opinion" is not entitled to controlling weight and, instead, must be evaluated based on several factors, including the opinion's consistency with the record as a whole. 20 C.F.R. § 404.1527(c)(4). The ALJ may discount the opinion of a treating provider when limitations within the opinion "stand alone" and were "never mentioned in the [provider's] numerous records or treatments." *Reed*, 399 F.3d at 921 (alteration changed). As described above, I find that there are sufficient inconsistencies between Ms. Miller's statements and her numerous treatment notes for the ALJ to have discounted Ms. Miller's statement.

In any case, Ms. Miller's statement does parallel the ALJ's RFC finding, in that the ALJ found that claimant could only perform simple, routine tasks and that he could "have only occasional contact with the public, coworkers, and supervisors." (AR 110). The similar result that the ALJ reached demonstrates that the ALJ evaluated the evidence in a neutral fashion. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) (citing *Richardson v. Perales*, 402 U.S. 389, 410 (1971) (offering the proposition that the ALJ possesses no interest in denying benefits and must act neutrally in developing the record)). Furthermore, I highlight the parallelism because it shows that the limitations the ALJ incorporated in claimant's RFC are in consonance with Ms. Miller's belatedly-produced opinion. (AR 110; 751-58).

The Eighth Circuit has recognized how peculiar a task it is for the Court to review how the ALJ might have weighed new evidence, and in fact, that such a task calls for "speculation" on the part of the Court. *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994)). The Court must apply a balancing test when reviewing contradictory evidence—here, the Certified Administrative Record, as known to the ALJ, against the recently

acquired statement of Ms. Miller. *Sobania*, 879 F.2d at 444. The record contains the evaluation of claimant's mental health by two separate state agency consultants (AR 79-81; 96-98), and more than fifty total records of claimant's mental health, including twenty notes regarding Ms. Miller's face-to-face counseling sessions with claimant. (AR 582-640). Ms. Miller's statement offers only eight pages of responses to primarily checkbox questions, some of which directly contradict her own treatment notes. (*See* AR 751-58). Applying the balancing test to the entirety of the record, I find that substantial evidence on the record as a whole would have supported the ALJ's decision, even if the ALJ had the benefit of Ms. Miller's opinion when deciding claimant's claim. Therefore, I recommend that the Court affirm the ALJ's decision denying benefits.

### C. *Residual Functional Capacity*

Claimant argues that it is the ALJ's duty to ensure that the record includes evidence produced by a treating or examining physician that addresses claimant's impairments and cites *Nevland v. Apfel* in support of this proposition. (Doc. 14, at 15-17). In the absence of such evidence, "the ALJ's decision cannot be said to be supported by substantial evidence." (*Id.*) (relying on *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)).

The ALJ has the duty to fully develop the record, independent of the claimant's burden. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010). The ALJ, however, does not have to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped. *Stormo*, 277 F.3d at 806. Claimant is correct in that the administrative record does not contain a "medical opinion," directly addressing how claimant's impairments affect his ability to function now.[3] *See* 20 C.F.R. 404.1527(a)(1).

---

[3] "*Medical opinions*. Medical opinions are statements from . . . *acceptable medical sources* that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2) (emphasis added) (effective for claims filed before March 27, 2017).

Eighth Circuit precedent, however, does not require a "medical opinion" when the ALJ relied on objective medical evidence in assessing claimant's RFC. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). A claimant's RFC is a medical question, and, thus, some medical evidence must support the determination of a claimant's RFC. *Eichelberger*, 390 F.3d at 591. Nevertheless, the holding in *Nevland* "does not compel remand in every case in which the administrative record lacks a treating doctor's opinion." *Morrow v. Berryhill*, No. C16-2023-LTS, 2017 WL 3581014, at *7 (N.D. Iowa Aug. 18, 2017) (citation and internal quotation marks omitted). The Court may affirm the ALJ's decision, even without an opinion from a treating or examining source, if there is other medical evidence demonstrating the claimant's ability to function in the workplace. *Id.*; *see also Agan v. Astrue*, 922 F. Supp.2d 730, 756 (N.D. Iowa 2013) (upholding ALJ's decision where the ALJ's decision was supported by substantial evidence on the record as a whole, even though the ALJ did not rely on the opinion of a treating physician in formulating his opinion). "The question is whether there is sufficient evidence of 'how [the claimant's] impairments . . . affect [her] residual functional capacity to do other work,' or her 'ability to function in the workplace.'" *Morrow*, 2017 WL 3581014, at *7 (omission and alteration in original) (quoting *Hattig v. Colvin*, No. C12-4092 MWB, 2013 WL 6511866, at *11 (N.D. Iowa Dec. 12, 2013)). In the end, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley*, 829 F.3d at 932 (citing *Myers*, 721 F.3d at 526-27 (affirming RFC without medical opinion evidence), and *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012) (same)).

Here, the ALJ pointed to several exhibits within the record, which show that claimant: was capable of independent living throughout the adjudicative period; worked two jobs and applied for a position for which he was ultimately not hired due to background check issues; and was physically and mentally able to perform personal care

tasks, prepare simple meals, and travel out of state. (AR 113-14). Specifically regarding claimant's physical health, the ALJ pointed to medical evidence throughout the record supporting grossly intact "motor strength, sensation, reflexes, and a normal gait." (AR 114). Similarly, the ALJ identified mental health medical evidence supporting the finding that although claimant suffered from the medically determinable impairments of depression and anxiety, claimant's mental status was "generally unremarkable" and claimant's depression was "largely situational, stemming from psychosocial and economic stressors." (AR 114). Here, I find that the ALJ cited sufficient medical evidence to establish that claimant retains the RFC to do other work, despite the record lacking a treating or examining physician's medical opinion. (AR 114).

Claimant also argued that, based on a recent Eighth Circuit ruling, *Combs v. Berryhill*, 878 F.3d 642, 647 (8th Cir. 2017), the ALJ committed a reversible error when she applied her own reasoning when interpreting non-examining opinions. (Doc. 14, at 17). In *Combs*, the ALJ credited the medical opinion of one reviewing physician over that of another reviewing physician. *Combs*, 878 F.3d at 646-47.

Here, unlike in *Combs*, the ALJ was not faced with two contradictory opinions, but was instead presented with two state agency experts who provided similar opinions based on a review of the medical evidence. (AR 114). Additionally, the ALJ relied on the entirety of the record in her decision, not just the two non-examining state experts, when she found that claimant was not disabled. (AR 114). The ALJ noted that the state agency consultants, although experts, had limited exposure to claimant. (AR 114). Therefore, the ALJ granted their opinions only partial weight where appropriate and did not "rel[y] heavily on their opinions in determining . . . the [RFC]." (*Id.*). Further, the two state agency consultants, after reviewing all available medical evidence, independently arrived at the same RFC. (*See* AR 76-80, 94-96). I find that the ALJ did

not erroneously discount one expert opinion and grant improper weight to the other opinion.

Claimant additionally argues that the state agency consultants' opinions were inaccurate because they were unable to review new medical evidence regarding claimant's back pain and subsequent surgery. (Doc 14, at 16). Claimant, however, "has the burden to establish [his] RFC." *Eichelberger*, 390 F.3d at 591 (citing *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004)). It seems likely that post-operative medical evidence would not have been available for the ALJ's review because claimant's lumbar laminectomy back surgery occurred approximately six weeks prior to claimant's hearing with the ALJ, which likely would not provide adequate time for such evidence to be generated. (AR 23, 643). Yet, when claimant appealed to the Appeals Council five months after the ALJ's decision, claimant provided no new or material evidence that claimant's condition had degraded at the time of the ALJ's decision in June 2016. (AR 319-21). In contrast, claimant showed his ability to augment the record when claimant provided Ms. Miller's statement to the Appeals Council as new evidence. (*Id*.). I find that because the ALJ did account for claimant's alleged back pain when she determined claimant's RFC (AR 109-10), claimant's alleged back pain was not a crucial issue that was undeveloped. Therefore, I find that the ALJ was under no duty to seek additional evidence to augment the record. *Stormo*, 277 F.3d at 806.

As previously stated, the RFC is based on all relevant medical and other evidence. *Eichelberger*, 390 F.3d at 591. Ultimately, the ALJ pointed to several exhibits within the record, which showed that claimant: was capable of independent living throughout the adjudicative period; had worked two jobs and applied for a position for which he was ultimately not hired due to background check issues; and was physically and mentally able to perform personal care tasks, prepare simple meals, and travel out of state. (AR 113-14). The medical record contains dozens of treatment notes detailing claimant's

physical and mental limitations. I find that the ALJ considered the medical records and notes of several treating physicians and other medical sources, and claimant's own testimony regarding his daily activities in determining that claimant had the RFC to do limited light work. Thus, despite the recording lacking a statutorily-defined "medical opinion," I find that the ALJ's decision is supported by substantial evidence on the record as a whole.

## VI. CONCLUSION

Therefore, I respectfully recommend that the District Court **affirm** the Commissioner's determination that claimant was not disabled, and enter judgment against claimant and in favor of the Commissioner.

Parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CIV. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 27th day of July, 2018.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa